## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN THE MATTER OF THE APPLICATION | ) | |
| OF THE UNITED STATES OF AMERICA | ) | |
| FOR A SEARCH WARRANT FOR THE | ) | |
| CONTENTS OF THREE CELLULAR | ) | |
| TELEPHONES: | | |
| | | |
| (1) AT&T cellular telephone | ) | Magistrate No. 16-427M |
| With serial number 328451134455 | ) | **[UNDER SEAL]** |
| | ) | |
| (2) AT&T cellular telephone | ) | Magistrate No. 16-428M |
| With serial number 325452391294 | ) | **[UNDER SEAL]** |
| | ) | |
| (3) Samsung Galaxy S4 with | ) | Magistrate No. 16-429M |
| IMEI # 990005905065182 | ) | **[UNDER SEAL]** |

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS FOR THREE CELL PHONES

I, MICHAEL C. WARFIELD, being duly sworn depose and state:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant authorizing the examination of property—three electronic devices (the "Devices")— which were seized by law enforcement from Laron HARVEY on April 21, 2016. These Devices are currently in the possession of the Drug Enforcement Administration ("DEA").

2.      As set forth below, I have probable cause to believe that the recovered Devices contain evidence of crimes in violation of 21 U.S.C. §§ 841(a)(1) (unlawful distribution of controlled substances) and 846 (conspiracy to distribute a controlled substance).

3.      I am currently deputized as a Task Force Officer of the Drug Enforcement Administration (DEA), United States Department of Justice (USDOJ).   As such, I am an

"investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and make arrests for offenses enumerated in Title 18, United States Code, Section 251.

4.      I am a Trooper with the Pennsylvania State Police and have been so employed since September 27, 1993. From February 2005, to October 2012, I was a full-time federally deputized Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), Pittsburgh District Office (PDO), Task Force Group 1 (TFG1). Currently, I am assigned to the Pennsylvania State Police (PSP), Bureau of Criminal Investigations (BCI), Drug Law Enforcement Division (DLED), Southwest Strike Force (SWSF). In addition, I am currently federally deputized, case specifically, by the DEA, which includes deputization in this ongoing investigation.

5.      During my career in law enforcement, I have personally conducted and participated in numerous federal drug trafficking investigations of individuals engaged in the illegal distribution of controlled dangerous substances, have been involved in narcotics related arrests and the execution of search warrants which resulted in the seizure of narcotics, and have assisted in the supervision of activities of informants who provided information and assistance resulting in drug buys. Furthermore, I have participated in the investigation of numerous drug trafficking conspiracies and cases involving the use of court-authorized disclosure of location data relating to cellular telephones.

6.      During the course of my training and experience, I have become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of drug proceeds, and the organization of drug conspiracies. In the course of conducting these

investigations, I have been involved in the use of the following investigative techniques: interviewing informants and cooperating witnesses, conducting physical surveillance, conducting and participating in short-term and long-term undercover operations including reverse undercover drug operations, consensual monitoring and recording of both telephonic and non-telephonic communications, analyzing pen register data, conducting court-authorized wire and oral interception electronic surveillance, and preparing and executing search warrants which have led to substantial seizures of narcotics, firearms, contraband, and evidence of criminal activity.

7.      Based on my training and experience, I know that narcotics traffickers routinely use cellular telephones to organize, conduct, and execute their business. Specifically, drug traffickers often require the use of a telephone facility to negotiate times, places, schemes, and manners for importing, possessing, concealing, and distributing controlled substances and for arranging the disposition of proceeds derived from the sale of controlled substances.

8.      However, drug traffickers also know that law enforcement will target their use of telephones. Accordingly, it is common practice for narcotics traffickers to routinely utilize telephones, cellular telephones, and in most cases, multiple cell phones to try and insulate and protect themselves from law enforcement. Additionally, it is my experience that narcotics traffickers will often contact customers on one phone and speak with co-conspirators on another. Moreover, it is not unusual for them to initiate such telephone services under the name of an associate or family member.

9.      I am aware that evidence of drug, firearm, and money laundering crimes can often be found in electronic media, including cellular telephones, laptop computers, cameras, and tablet devices. Such evidence can be found throughout those items, such as in text messages,

contact lists indicating the names and numbers of associates, call/text logs indicating calls/texts made to and received from associates, online search history files, word processing documents, and photograph and video gallery files.  It should be noted that, with the advance of technology, the distinction between computers and cellular telephones is quickly becoming less clear. Actions such as internet searching or emailing, in addition to calling and text messaging and photographing, can now be performed from many cell phones.  In addition, as noted above, those involved in drug and firearm trafficking crimes commonly communicate using multiple cellular telephones.  Contemporaneous possession of multiple cellular telephones is, therefore, evidence of such trafficking.  Moreover, the particular numbers of, and the particular numbers dialed by, particular cellular telephones can be evidence of drug trafficking, particularly in light of the fact that it is a practical necessity that drug traffickers communicate with each other, as well as with their customers and suppliers, by telephone.  Such numbers can confirm identities of particular associates and the occurrence of certain events.

10.       Due to narcotics traffickers' heavy reliance on cellular telephones to conduct their business, evidence of drug crimes can often be found on cellular telephones.  For example, when a lower-level narcotics dealer receives an order (either in person or by telephone) for heroin or cocaine, that dealer may place a call or send a text message to a higher-level narcotics dealer indicating that he needs more narcotics to provide to the customer.  Accordingly, evidence of such a narcotics conspiracy can be found in various locations in a cellular telephone, such as in text messages, contact lists indicating the names and numbers of associates, and call logs indicating calls made to and received from associates.  This evidence of a narcotics conspiracy is critical to law enforcement's ability to locate and arrest all individuals involved in a particular narcotics sale.

11.     Further, I am aware that drug traffickers sometimes use their cellular telephones to take and retain trophy photographs and videos of their drugs, firearms, and narcotics sales proceeds.  Such traffickers, like law-abiding citizens, sometimes take photographs and videos using their cellular telephones of themselves with their friends, relatives, and associates and keep the photographs on their cellular telephones.  When they are taken or retained by drug traffickers, such photographs and videos can be evidence, and can lead to additional evidence, of such illegal trafficking activity by identifying the traffickers, contraband, and people who are actively assisting and/or supporting the trafficking activity as well as the locations where they live or where they store their drugs, proceeds, or paraphernalia.

12.     Last, as with most electronic/digital technology items, communications made from an electronic device, such as a cellular telephone, are often saved or stored on the device.  Storing this information can be intentional, for example, by saving a text message or a contact or an e-mail.  Digital information can also be retained unintentionally.  Traces of the path of an electronic communication or of an internet search may be automatically stored in many places on a cellular telephone.  A forensic examiner often can recover evidence that shows when and in what manner a user of an electronic device, such as a computer or a cell phone, used such a device.  Electronic files or remnants of such files can be recovered months or even years after they have been downloaded, stored, deleted, or viewed.

13.     I am submitting this affidavit in support of an application for a warrant to search three cellular telephones—the Devices—which were seized by law enforcement during a traffic stop and subsequent arrest of Laron HARVEY, on April 21, 2016.  I have obtained the information contained in this affidavit from my own participation in this investigation as well as from my conversations and interactions with other law enforcement agents and officers.

14.     This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and it does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

15.     The Devices to be searched are:

 a.  AT&T Cellular Telephone with Serial Number 328451134455 (**Search Location 1**);

 a.  AT&T Cellular Telephone with Serial Number 325452391294 (**Search Location 2**); and

 b.  Samsung Galaxy S4 Cellular Telephone with IMEI # 990005905065182 (**Search Location 3**, hereinafter collectively referred to as the **Search Locations**)

The Devices are currently located at the Pittsburgh District Office of the Drug Enforcement Administration.  As described below, there is probable cause to conclude that each of the Devices contains evidence of the commission of the federal felony offenses as listed in Attachment A.

16.     The applied-for warrant would authorize the forensic and/or manual examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment A.

## PROBABLE CAUSE

17.     During the course of an ongoing investigation into heroin trafficking in Allegheny County and the surrounding areas, Laron HARVEY was identified as an individual who would utilize a cellular telephone to order multiple brick amounts of heroin from his source of supply in the Pittsburgh area.

18.     Pursuant to a federally authorized wiretap, HARVEY was intercepted ordering up an amount of heroin from his source of supply on April 21, 2016.[1]

19.     On April 21, 2016, your affiant and other members of law enforcement confirmed, via authorized wiretap interceptions and surveillance, that HARVEY had obtained an amount of heroin in the Pittsburgh area, and was traveling back to the Johnstown, PA area.

20.     Pennsylvania State Police Trooper Ryan Marmol was notified of this fact, and that HARVEY would likely have an amount of heroin in his vehicle.  On April 21, 2016, at approximately 1343 hours, Pennsylvania State Police Trooper Ryan Marmol was traveling along SR 22 eastbound near SR 119, when he observed a 2016 white Nissan Sentra, bearing Pennsylvania registration "KBC9827" following another vehicle too closely.  Note: A query of "KBC9827" revealed this vehicle as being an Enterprise rental car.  A traffic stop was subsequently conducted along SR 22.  Upon approach, Tpr. Marmol made contact with the operator, Laron HARVEY, who was identified via Pennsylvania drivers license, and the front seat passenger, Kara Ann COLEMAN, who was identified via Pennsylvania identification card.  During the course of the traffic stop, in addition to the information known to Trooper Marmol as provided by your affiant, the following indicators of criminal activity were observed and noted:

- COLEMAN's hands were trembling and she constantly grabbed her legs in attempt to suppress this behavior;

- HARVEY indicated he was traveling from Penn Hills, PA (known source area for distribution of narcotics, specifically heroin);

---

[1] NOTE:  Because this Affidavit is being submitted for the limited purpose of seeking authorization for a federal search warrant for the **Search Locations**, I have not set forth each and every event, known fact, and known intelligence of HARVEY's drug related activities.  Instead, I have set forth only those events, facts, and known intelligence that I believe is necessary to establish the requisite probable cause to receive a search warrant authorization the search of the **Search Locations**.

- HARVEY indicated he was traveling to Johnstown, PA (known source area for distribution of narcotics, specifically heroin);

- Observed a "burner" phone in the center console of the suspect vehicle (small Samsung flip phone, which drug traffickers are known to utilize);

- After Tpr. Marmol removed HARVEY from the vehicle for questioning, he was standing at the passenger side of Tpr. Marmol's patrol vehicle and belched a few times (noted this as nervous behavior);

- HARVEY had no clue where he went in Penn Hills. HARVEY related that he was coming from COLEMAN's sister's, but did not know the address or anything of that nature;

- COLEMAN did not know the address where her sister lived in Penn Hills and related that her sister moved there a week ago; and

- Third party rental, rentee was COLEMAN's grandmother and HARVEY was an "authorized driver.""

Based on training, experience, and knowledge of HARVEY's drug related activities, Tpr. Marmol requested consent to search the aforementioned vehicle, which HARVEY denied. Subsequently, Tpr. Marmol summoned a K9 to the location of the stop. Chief Randy GLICK (Derry Borough Police Department) and K9 Blade responded. An exterior scan of the vehicle was conducted and GLICK advised his dog alerted on the suspect vehicle. As such, a probable cause search of the vehicle was conducted at that time, which revealed five hundred (500) glassine packets of suspected heroin, which was stamped "OMG" in green ink and "Killing Time" in red ink. In addition to the seized suspected heroin, the **Search Locations** were seized as a part of the search and subsequent arrest of HARVEY.

21.      The Devices are currently in storage at the Pittsburgh District Office of the DEA. In my training and experience, I know that the Devices have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the DEA.

## **CONCLUSION**

22.        I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described above to seek the items described in Attachment A.

Respectfully submitted,

Michael C. Warfield
Task Force Officer - DEA
Pittsburgh District Office

Subscribed and sworn to before me
on April 25, 2016:

HONORABLE MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

1.      All records, information, and items evidencing who used the device and/or when and/or from where, or a violation Title 21, United States Code, Sections 841(a)(i) and 846, including:

- a.     incoming and outgoing call and text message logs
- b.     contact lists
- c.     photo and video galleries
- d.     sent and received text messages
- e.     online searches and sites viewed via the internet
- f.      online or electronic communications sent and received, including email, chat, and instant messages
- g.     sent and received audio files
- h.     navigation, mapping, and GPS files
- i.      telephone settings, including speed dial numbers and the telephone number for the subject telephone and related identifying information such as the ESN for the telephone
- j.      call forwarding information
- k.     messages drafted but not sent
- l.      voice messages

2.      As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form. However, no real-time communications will be intercepted and searched during service.